IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMOTHY M. MARCHIO<br><br>                    Plaintiff,<br><br>        vs.<br><br><br>UNION PACIFIC RAILROAD<br>COMPANY, a Delaware corporation,<br><br>                    Defendant. | **8:25CV264**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff's Motion for Sanctions, Filing No. 53, and Defendant's Motion for Hearing. Filing No. 62. Plaintiff contends Defendant failed to preserve a video of the train yard and the train consist from the date of Plaintiff's injury resulting in spoilation of evidence. *Id*.  As an initial matter, upon review of the briefing, the Court finds a hearing unnecessary and, as such, denies the motion for hearing. Filing No. 62. Moreover, for the reasons set forth herein, the Court denies Plaintiff's motion for sanctions. Filing No. 53.

**BACKGROUND**

This case relates to injuries Plaintiff alleges he sustained on September 1, 2022, while working as a conductor for Defendant ("the Incident"). Filing No. 1. Plaintiff's claims are brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60. According to the Complaint, on September 1, 2022, Plaintiff, while working as a conductor-in-training, was inside a locomotive cab with his trainer and another person who were controlling a remote-control locomotive. Plaintiff was told by his crewmate that railcars, loaded with sand, would be released

1

down the hump track and directly into the locomotive occupied by Plaintiff. Plaintiff alleges he was thrown out of his chair, into the back door, and onto the floor upon the initial impact. Before Plaintiff was completely rebalanced, the next three railcars collided with Plaintiff's locomotive throwing him and his crewmate onto the floor. Three more cars collided with Plaintiff's locomotive before they stopped sending cars. Plaintiff alleges that, because of the collisions and his falls to the ground, he felt immediate pain in his elbow, neck, shoulder, and back. Filing No. 1.

Evidence submitted in conjunction with the pending motion supports the following. On the evening of the Incident, Plaintiff spoke with Kyle Benson, superintendent of train operations at North Platte, via phone. Plaintiff told Benson he was able to return to work the next day, had not sought medical attention, and had no lost workdays. Filing No. 61-3 at 2-3. The day after the Incident, September 2, 2022, Plaintiff filled out a "705 Report." Filing No. 55-4. In this report, Plaintiff indicated the Incident "caus[ed] some bumbs [sic], scrapes and bruises." Filing No. 55-4; Filing No. 55-2 at 29. Also on this day, Plaintiff spoke with Benson and Nathan Hammond about the injury. Filing No. 55-2 at 29. During this meeting, Plaintiff watched the yard video of the Incident, which is at issue in this motion. According to Plaintiff, the video "seemed to be a camera on a – maybe like a light tower out in the East Bowl, and it showed the – the three cars that were rolling into that Track 50 that our locomotive was parked in." Filing No. 55-2 at 29. Plaintiff further testified the yard video "showed the cars roll down the hill, come into Track 50 where we were at, but it didn't – they – it did not include the collision." Filing No. 55-2 at 32.

On July 26, 2023, Plaintiff filled out a "Report of Personal Injury or Occupational Illness." Filing No. 55-3. In this document, Plaintiff indicated the Incident caused "L3 & L4 herniated disc" and that the "equipment or tools", "working conditions", and "other persons" caused or contributed to the cause of the "accident/injury/illness." Plaintiff described the injury as "lower back and neck pain", described his symptoms as "extreme pain back and neck numbness in right

2

leg, left hand" and, further, that he first noticed symptoms on the date of the accident (September 1, 2022). This document indicated Plaintiff was first treated or diagnosed in "October/November 2022." On April 9, 2025, Plaintiff filed the present complaint alleging claims for negligence and breach of duty under FELA, pursuant to 45 U.S.C. § 51. Filing No. 1.

Relevant to the preservation issue, on the day of the Incident, John P. Mervin, Director Northern Regional Safety, sent an email to Benson, in which Mervin asks Benson to follow up on various aspects related to the Incident. Specifically, he asks Benson to "[p]ull the yard cameras." Benson did so. Benson submitted an affidavit indicating the yard camera "only captured a portion of the incident" because it is "approximately one (1) to one-half (1/2) mile away from the incident location" and "is pointed at a downward angle because the purpose of the camera is to capture the switches." Filing No. 61-3. Benson further states, "the yard camera captured the cars that were humped and rolling into track 50, but it did not capture the details regarding the nature or speed of the coupling, the locomotive [Plaintiff] was in, or the number of buffer cars being used due to the camera angle and distance away from the camera." Id.

Defendant did not preserve the yard camera discussed above but did preserve the inward-facing locomotive video "in an abundance of caution and to assess if there were any internal rule violations." Filing No. 61-3 at 3. The yard camera was automatically overwritten after thirty days pursuant to Defendant's routine data retention policy. Id.

Also presently at issue is the train consist from the day of the Incident. The train consist is created daily by UP dispatch and contains day of work assignments. Filing No. 61-3 at 4. According to Benson, the train consist is not routinely stored and is only available if an employee prints out the paperwork for the train they are working on that day. Id.

Defendant did produce the car detail report from the day of the Incident. Testimony indicates this report shows a car's weight/load, destination track, and the car's sequential movement, including requested, projected, and actual speeds. Filing No. 61-6 at 10, 12. Plaintiff's expert relied upon this report when reaching his opinions. Filing No. 55-9 at 4, 32.

## ANALYSIS

A court's power to impose sanctions based on discovery violations arise from two distinct authorities: the Federal Rules of Civil Procedure and the court's inherent authority. The Federal Rules of Civil Procedure provide for sanctions when a party fails to respond to discovery requests, when a party fails to comply with a court order regarding discovery, or when a party fails to preserve electronically stored information that should have been preserved in anticipation or conduct of litigation. *See* Fed. R. Civ. P. 37(b), (d), and (e).

If the party's conduct falls outside of the conduct sanctionable pursuant to the rules, a court may still impose sanctions based upon its inherent authority to control its own judicial proceedings. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). The Eighth Circuit has advised that "inherent authority is a broad and powerful tool. As such, it should be used sparingly." *Sentis Grp., Inc. v. Shell Oil co.*, 559 F.3d 888, 899-900 (8th Cir. 2009) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.")). In general, "courts first should turn to specific rules tailored for the situation at hand . . . to justify sanctions. Then, as an alternative basis for support or in circumstances where specific rules are insufficient, . . . it may be appropriate to invoke their inherent authority." *Id.* at 900; *see also* *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020).

4

The present motion stems from Plaintiff's contention that Defendant should have preserved the "yard video" and information regarding the train consists on the day of the Incident. Rule 37(e) provides an avenue for sanctions for pre-litigation failure to preserve electronically stored information. Specifically, and in relevant part, Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>> (A) presume that the lost information was unfavorable to the party;
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Rule 37(e) is based on the common-law duty to preserve and does not attempt to create a new duty. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." *E\*Trade Securities, LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D.Minn. Apr. 18, 2005) (citing *Stevenson*, 354 F.3d at 746.).

As such, determining whether Defendant anticipated litigation from the Incident, and if so, when litigation was anticipated, is critical to evaluating whether sanctions are proper. Accordingly, the undersigned considers what occurred the day of the Incident and in the days that followed.

5

The evening of the Incident, Plaintiff spoke with Benson. Filing No. 55-2 at 29; Filing No. 61-3 at 2-3. During this call, Plaintiff told Benson he could return to work the next day, had not sought medical attention, and had no lost work days. *Id.* The day after the accident, September 2, 2022, Plaintiff filled out a "705 Report." Filing No. 55-4. In this report, Plaintiff indicated the Incident "caus[ed] some bumbs [sic], scrapes and bruises." Filing No. 55-4. Plaintiff spoke with Benson and Hammond again the day after the Incident. Filing No. 55-2 at 29

On July 26, 2023, ten months after the incident, Plaintiff filled out a "Report of Personal Injury or Occupational Illness." Filing No. 61-2. In this document, he indicated the Incident caused "L3 & L4 herniated disc" and that the "equipment or tools", "working conditions", and "other persons" caused or contributed to the cause of the "accident/injury/illness." Plaintiff described the injury as "lower back and neck pain", described his symptoms as "extreme pain back and neck numbness in right leg, left hand" and, further, that he first noticed symptoms on the date of the accident (September 1, 2022). This document indicated Plaintiff was first treated or diagnosed in "October/November 2022." Filing No. 61-2.

Based on this information, Defendant could not have reasonably anticipated litigation regarding the Incident prior to Plaintiff filling out the "Report of Personal Injury or Occupational Illness" on July 26, 2023. Rather, Plaintiff first indicated the Incident caused him no more than some bumps, scrapes, and bruises. Then, over ten months after the Incident, and over nine months after Defendant's standard retention policy, Plaintiff advised Defendant of more serious injuries. This is despite the fact that he allegedly began treatment within a couple months of the Incident.

In support of his argument that Defendant anticipated litigation, Plaintiff points out the fact that Defendant preserved the cab video but not the yard video. However, the facts before the Court support a finding that this was done "out of an abundance of caution" and for use in evaluating whether internal policy was violated. Filing No. 61-3 at 2. Given the other facts – namely, Plaintiff's report, his

6

continued work, and a lack of additional notice to Defendant for over 10 months – the Court concludes Defendant could not have reasonably foreseen this litigation at the time the relevant materials were destroyed as part of routine retention. *See, i.e., North Am. Science Assoc., LLC v. Conforti*, 2024 WL 4903753 at *18 (D.Minn. Nov. 27, 2024) (concluding a party did not reasonably foresee litigation until December 2023 even though, months prior to December 2023, these parties talked to the other party's CEO about concerns that the non-preserving party were engaging in contractually and legally prohibited activities).

Plaintiff relies heavily on *Spotted Horse v. BNSF R.R.Co.*, 379 Mont. 314 (2015) and *Anderson v. BNSF Ry. Co.*, 681 F.Supp.3d 899, 911 (S.D.Iowa 2023) to support his position. These cases are not binding upon this Court and, further, are distinguishable from the present circumstances. Specifically, unlike here, both *Spotted Horse* and *Anderson* involved severe injuries and, as a result, the defendants in *Spotted Horse* and *Anderson* were much more likely to anticipate potential litigation before formal litigation had begun. Moreover, when imposing sanctions, both the *Spotted Horse* court and *Anderson* court indicated the defendant (BNSF, in both cases) had a documented history of "concealing or disposing of evidence." *Spotted Horse*, 379 Mont. at 320-21; *Anderson*, 681 F.Supp.3d at 918. The court has no evidence before it of a pattern or practice by Union Pacific to conceal or dispose of evidence.[1][2]

Moreover, even if the Court were to find Defendant should have preserved the evidence at issue, the Court finds the evidence can be sufficiently restored

---

[1] The undersigned recognizes Plaintiff's counsel provided an affidavit indicating that in his "experience as an attorney litigating many FELA cases involving [Defendant], [Defendant] routinely produces yard video in FELA cases where the yard video is used to make arguments that benefit [Defendant]." This vague statement is not entitled to significant weight.

[2] The undersigned recognizes this pattern or practice is more relevant to a finding under 37(e)(2) that the defendant was acting with the intent to deprive.

7

through additional discovery. *See* Fed. R. Civ. P. 37(e) (stating sanctions are appropriate when the evidence cannot be restored or replaced through additional discovery). First and foremost, the inward-facing locomotive video capturing the Incident was preserved. Additionally, the car detail report, which can be used to determine the speed of the coupling, the weight of the cars, and "the proper or improper retarder function", for the day of the Incident has been produced in discovery and appears to have been relied upon by Plaintiff's expert. Filing No. 61-6 at 10, 12; Filing No. 55-9 at 4, 32.

Even if the Court found Defendant should have anticipated litigation and evidence could not be replaced, the Court finds the destruction of the yard video presents no prejudice to Plaintiff. Rather, the Court questions the usefulness of the yard video at all. Plaintiff takes issue with Defendant's unilateral statement that the yard video does not show the Incident. However, it is noteworthy that Plaintiff himself reviewed the yard video but does not dispute Defendant's characterization of the video with testimony or an affidavit. In fact, Plaintiff's testimony corroborates Defendant's characterization of the contents of the yard video. Filing No. 55-2 at 29 (Plaintiff describing the yard video as follows: it "seemed to be a camera on a – maybe like a light tower out in the East Bowl, and it showed the – the three cars that were rolling into that Track 50 that our locomotive was parked in" and, further, stating "it showed the cars roll down the hill, come into Track 50 where we were at, but it didn't – they – it did not include the collision."). Based on the lack of utility of the yard video, as well as the other evidence produced or available in discovery, the Court does not find Plaintiff to be prejudiced by its destruction, and thus, sanctions are not warranted.

Similarly, to the extent it could be relevant, the Court finds Defendant did not intend to deprive Plaintiff of the information's use in litigation. *Leonard v. St. Charles Co. Police Dep't*, 59 F.4th 355, 364 (8th Cir. 2023) (finding the district court did not abuse its discretion when it did not order an adverse inference because

there was "too great of a leap" to conclude the video was deleted on purpose when the system automatically overwrote older recordings."). Rather, the yard video had been overwritten pursuant to Union Pacific's thirty (30) day storage policy, and the train consist was no longer available from the dispatch office by the time Defendant was aware litigation was likely.

Finally, ordering sanctions pursuant to this Court's inherent powers is also unwarranted. As set forth herein, inherent powers should be used sparingly. *Sentis Grp., Inc.*, 599 F.3d at 899-900. Here, the Court does not find the discovery rules implicated to be insufficient necessitating an alternative basis for sanctions. *See Sentis Grp., Inc.*, 559 F.3d at 900. Nor does the Court find Defendant's conduct to be that which "abuses the judicial process." *See Chambers*, 501 U.S. at 44–45. This is not a situation in which the Incident posed death or serious injury on the date of the Incident so that Defendant could have reasonably anticipated litigation would ensue as a result of the Incident. Moreover, the information at issue was deleted pursuant to Defendant's standard retention policy. *See Stevenson*, 354 F.3d at 748-49. (concluding the district court abused its discretion in ordering sanctions pursuant to its inherent powers when a video was deleted pursuant to document retention policies before the defendant knew litigation was imminent even when the accident at hand was "serious"). Therefore, the undersigned does not find this to be an appropriate use of its inherent powers.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Sanctions, Filing No. 53, is denied.
2. Defendant's Motion for Hearing, Filing No. 62, is denied.

Dated this 8th day of June, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge